**FILED**
**Oct 10, 2019**
**01:03 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





### TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| JON WOODS,<br>    Employee,<br>v. | )<br>)<br>) | Docket No. 2018-05-0400 |
| | ) | |
| TRAEGER PELLET GRILLS,<br>INC.,<br>    Employer,<br>And | )<br>)<br>)<br>) | State File No. 86530-2017 |
| | ) | |
| ADVANTAGE WORKERS'<br>COMPENSATION INS. CO.,<br>    Carrier. | )<br>)<br>) | Judge Dale Tipps |

---

## EXPEDITED HEARING ORDER GRANTING REQUESTED BENEFITS

---

This case came before the Court on October 3, 2019, for an Expedited Hearing on whether Mr. Woods is entitled to payment of additional temporary disability benefits in spite of his termination for cause. To receive these benefits, Mr. Woods must show that he is likely to establish at a hearing on the merits that he is entitled to temporary disability benefits for the period of January 13, 2018, to October 25, 2018. For the reasons below, the Court holds Mr. Woods met this burden and is entitled to the requested benefits.

### History of Claim

*Medical Treatment*

While working for Traeger near Seattle, Washington, Mr. Woods injured his back while lifting a grill on November 3, 2017. He received authorized medical treatment. After Mr. Woods returned to his home in Lawrenceburg, Tennessee, Traeger authorized additional treatment at Middle Tennessee Medical.

In December, Mr. Woods moved to San Diego, and Traeger provided a panel of

1

physicians there. He continued physical therapy. However, before Mr. Woods could schedule an appointment with his panel physician, his wife received a new job assignment, and they moved to Los Angeles. Traeger provided another panel, and Mr. Woods selected Adventist Health.

Before his first appointment at Adventist, Mr. Woods went to Tyler Physical Therapy on January 24, 2018. He reported he wanted to return to work and felt capable of doing so.

Mr. Woods had only one appointment at Adventist. On January 31, FNP Carol Ow diagnosed lumbar strain and sciatica, and she referred him to an orthopedic specialist. She also instructed Mr. Woods to continue his physical therapy and assigned modified restrictions of no lifting, pushing, or pulling over five pounds and no excessive standing.

*Termination*

A few days after the injury, Kortni Hobson, a Human Resource Specialist at Traeger, emailed an incident report and Family Medical Leave Act (FMLA) documents to Mr. Woods. She asked him to return the completed FMLA certification by November 24 because Traeger was treating his "time off since November 3 as FMLA." Ms. Hobson explained that if she did not receive the paperwork, "your leave may be denied and your absences may be subject to [Traeger's] time-off policies and procedures." Over the next two months, Ms. Hobson and Ashley West, the Human Resource Manager, repeatedly tried to get Mr. Woods to complete and return the FMLA documents.

Mr. Woods testified that he tried to comply with their requests, but none of his providers at Middle Tennessee Medical would complete the medical portion of the FMLA certification. He hoped to get his San Diego doctor to complete it, but was unable to get an appointment before he moved to Los Angeles.

The day before Mr. Woods's first appointment with Adventist, Traeger terminated his employment on January 30. Ms. Hobson stated in her affidavit that he was terminated under Traeger's attendance policies. Ms. Hobson and Ms. West confirmed in their affidavits that Traeger terminated Mr. Woods for failing to provide a physician's statement after missing more than three consecutive days of work.

The parties stipulated to a weekly compensation rate of $742.79.

Mr. Woods requested that the Court order Traeger to pay temporary disability benefits from January 13, 2018, to October 25, 2018.[1]

---

[1] Although Mr. Woods was not terminated until January 30, Traeger stopped his temporary disability benefits before that date. From a Notice of Controversy filed on January 16, it appears Traeger

Traeger argued that Mr. Woods is not entitled to the requested benefits. It first noted that he was not taken completely off work during this period. Next, Traeger pointed out that his temporary restrictions were removed during his January 24 physical therapy appointment, and Mr. Woods was terminated for violating company attendance policies a few days later. Although FNP Ow assigned temporary restrictions the next day, Traeger had no duty to offer restricted work or pay temporary partial disability benefits because it had already fired Mr. Woods for cause.

## Findings of Fact and Conclusions of Law

Mr. Woods must provide sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

### *Temporary Total Disability*

To receive temporary total disability benefits, Mr. Woods must establish that (1) he became disabled from working due to a compensable injury; (2) a causal connection between his injury and his inability to work; and (3) his period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). None of the medical records showed that Mr. Woods's physicians took him completely off work. Without evidence that he was "disabled from working," Mr. Woods has not proven he is likely to succeed on a claim for temporary total disability benefits.

### *Temporary Partial Disability*

Temporary partial disability (TPD) benefits are available when the temporary disability is not total. Specifically, TPD "refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id*. An employee may receive TPD benefits when the treating physician has him to return to work with restrictions but the employer either (1) cannot return the employee to work within those restrictions or (2) cannot provide restricted work that pays the employee's average weekly wage on the date of injury. *Id.* at *8. TPD benefits are based on sixty-six and two thirds percent of the difference between an employee's average weekly wage and the wage he is able to earn in his partially disabled condition. Tenn. Code Ann. § 50-6-207(2)(A).

---

terminated these benefits because it contended Mr. Woods had missed a January 16 physical therapy appointment. Mr. Woods denied knowing he had an appointment scheduled for that day.

No one disputes that Mr. Woods had medical restrictions when Traeger first stopped his TPD. Traeger filed a Notice of Controversy stating that Mr. Woods failed to attend a physical therapy appointment on January 16, 2018. However, Mr. Woods testified that he was unaware of the appointment, and the adjuster had emailed him a few days earlier saying that his physical therapy was complete. The Court finds Mr. Woods's unrebutted explanation credible. Mr. Woods is therefore entitled to TPD benefits from January 13 through at least January 29, the day before his termination.[2]

Mr. Woods's entitlement to TPD after January 29 requires additional analysis. An employee's termination for misconduct may relieve an employer of the obligation to pay temporary disability benefits if the reason for termination qualifies as misconduct under ordinary workplace rules. *Barrett v. Lithko Contracting, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *9 (June 17, 2016). "When confronted with such a case, courts must consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." *Id*.

In this case, Mr. Woods was terminated for violating Traeger's attendance policy. Specifically, Traeger contended that because he failed to return the FMLA certification, it was unable to approve his leave, which made him subject to its time-off rules. Under those rules, Mr. Woods's failure to provide a physician's statement was grounds for termination.

Traeger's arguments are unpersuasive. Ms. Hobson noted in her email to Mr. Woods that Traeger *chose* to treat his time off "as FMLA." The Court does not question the right of an employer to treat a compensable work injury as an FMLA situation. However, Traeger is not required to place injured workers on FMLA leave – it could simply acknowledge that work injuries sometimes require employee to miss work. Moreover, the effect of Traeger's choice was to impose requirements on Mr. Woods that exceed the requirements of the Workers' Compensation Law. In other words, Tennessee law does not require an employee to complete and return FMLA documentation to receive temporary disability benefits. Traeger's approach would allow employers to limit their duty to pay temporary disability benefits by imposing additional requirements on its employees and then firing them when they fail to meet those requirements. The Court therefore finds that this application of the attendance rules is unreasonable under these facts, and Traeger's need to enforce the rule is outweighed by its statutory duty to provide TPD benefits.

Further, Traeger's approach seems disingenuous. Mr. Woods reported a work

---

[2] Traeger argued that Mr. Woods's restrictions were lifted on January 24. This is incorrect. Mr. Woods acknowledged that he asked the physical therapist to release him to work because he was concerned about losing his job. However, a review of the Tyler Physical Therapy records does not indicate any change in his restrictions. Further, even if they did, assigning restrictions is the province of a physician, not a physical therapist. *Bolton v. CNA Ins. Co.*, 821 S.W.2d 932, 938 (Tenn. 1991)).

4

injury, and Traeger immediately accepted the claim and began providing medical benefits. From the start, it had a legal right to obtain every medical record or physician's note regarding Mr. Woods's treatment for the injury, as well as a statutory method for gathering those records. *See* Tenn. Code Ann. § 50-6-204(a)(2)(A). If it needed additional information as to Mr. Woods's restrictions or ability to return to work, it could have contacted the medical providers. With that information, Traeger could have offered him light duty within his restrictions. Traeger simply chose not to do any of this, but instead asked Mr. Woods to provide documentation unrelated to workers' compensation law and then fired him for nonattendance while he was under medical restrictions.

The Court recognizes that "even though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules." *Barrett,* at *9. Traeger had a right to treat this injury as an FMLA matter as long as it also complied with the Workers' Compensation Law. That right does not allow it to terminate Mr. Woods for attendance violations based on an incomplete FMLA certification and then use that termination to avoid its duty to pay TPD benefits.

Mr. Woods testified that he did not work during the period in question, and Traeger introduced no evidence that it ever offered light duty. Therefore, the Court holds he is likely to prevail at a hearing on the merits that he is entitled to the requested TPD benefits.

 **IT IS, THEREFORE, ORDERED** as follows:

1. Traeger shall pay Mr. Woods temporary partial disability benefits for the period January 13, 2018, to October 25, 2018, at the stipulated compensation rate of $742.79 per week or $30,348.28.

2. This case is set for a Scheduling Hearing on January 8, 2020, at 9:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

 **ENTERED October 10, 2019.**


_____
 **Judge Dale Tipps**
 **Court of Workers' Compensation Claims**

5

**APPENDIX**

Exhibits:
1. Affidavit of Jon Woods
2. January 31, 2018 Adventist Health record
3. Affidavit of Ashley West
4. Affidavit of Kortni Hobson
5. Report of Accident and records from Healthworks
6. April, 17, 2019 record from Southern California Orthopedic Institute
7. November 16, 2017 medical records (Identification Only)
8. Tyler Physical Therapy records
9. Traeger Incident Report
10. DocuSign receipt
11. Email from Kortni Hobson to Jon Woods
12. Emails between Kortni Hobson and Jon Woods
13. Emails between Megan Rotella and Jon Woods
14. Email from Megan Rotella to Jon Woods
15. Email from Megan Rotella to Jon Woods
16. Emails between Megan Rotella and Jon Woods
17. Emails from Megan Rotella to Jon Woods
18. January 30, 2018 termination letter
19. Email from Kortni Hobson to Jon Woods
20. Email from Kortni Hobson to Jon Woods
21. Letter from Kortni Hobson to Jon Woods
22. Email from Kortni Hobson to Jon Woods
23. Employee Handbook signature page (Identification Only)
24. Employee On-the-Job Injuries Responsibilities (Identification Only)

Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Expedited Hearing Statement
5. Employer's Revised Pre-Expedited Hearing Statement
6. Reply to Employer's Revised Pre-Expedited Hearing Statement
7. Employee's Motion in Limine
8. Employer's Motion in Limine

---

[3] Both parties filed Post-Hearing Briefs, but failed to request the Court's permission as required by Tennessee Compilation Rules and Regulations 0800-002-21-.20(2) (2019).

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on October 10, 2019.

| Name | Certified Mail | Via Email | Service Sent To |
|------|----------------|-----------|-----------------|
| J. Allen Brown, Employee's Attorney | | X | allen@jallenbrownpllc.com |
| Gerard Jabaley, Employer's Attorney | | X | gjabaley@wimberlylawson.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

### List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

### * Attach an additional sheet for each additional Appellee *

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____      2. Address: _____

3. Telephone Number: _____      4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

Amount Owed         To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                 RDA 11082